## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MARYLAND
### (Baltimore Division)

| | |
|---|---|
| **EVAPCO, INC.** | * |
| 5151 Allendale Lane | * |
| Tawneytown, MD. 21787 | |
| | * |
| Plaintiff, | * |
| | |
| v. | *  Civil Action No. _____ |
| | |
| **MECHANICAL PRODUCTS** | * |
| **SOUTHWEST, LLC** | |
| 2620 East Rose Garden Lane, Suite 1 | * |
| Phoenix, Arizona 85050 | |
| | * |
| **SERVE ON**: | |
| Frank Schmitt | * |
| 17807 N. 87th Way | |
| Scottsdale, AZ 85255 | * |
| | |
| and | * |
| | |
| **FRANK SCHMITT,** | * |
| Frank Schmitt | |
| 17807 N. 87th Way | * |
| Scottsdale, AZ 85255 | |
| | * |
| and | |
| | * |
| **ENVIRON, LLC** | |
| 2113 West Parkside Lane | * |
| Phoenix, Arizona 85027 | |
| | * |
| **SERVE ON**: | |
| BR Statutory Service, LLC | * |
| c/o Bosse Rollman PC | |
| 3507 North Campbell Ave, Ste 111 | * |
| Tucson, Arizona 85719 | |
| | * |
| | |
| Defendants. | * |

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## COMPLAINT

Plaintiff EVAPCO, Inc. ("Evapco"), by its undersigned attorneys, hereby files suit against Defendants Mechanical Products Southwest, LLC ("MPSW"), its principal, Frank Schmitt ("Schmitt"), and its affiliate, Environ LLC (f/k/a Environ, Inc.) ("Environ") (collectively "Defendants"), and alleges as follows:

### NATURE OF THE ACTION

1.      Evapco brings this action to protect its business from imminent and irreparable harm resulting from: (i) Defendants' breach of a non-compete and other post-termination obligations under their sales representative and service center contracts with Evapco; and (ii) MPSW's infringement of Evapco's trademarks and acts of unfair competition in violation of the Lanham Act.

2.      Evapco is a leading manufacturer and global supplier of heating, ventilation and air conditioning (HVAC) and refrigeration products headquartered in Taneytown, Maryland.

3.      Pursuant to written agreements, Evapco contractually retained Defendant MPSW to serve as an independent sales representative and an authorized service center for EVAPCO®-branded products in certain counties in Arizona. Pursuant to those agreements, Evapco granted MPSW a license to use its federally registered trademarks in promoting, selling and servicing EVAPCO® products, and further provided MPSW and its principal, Schmitt, access to certain confidential business information relating to Evapco's products and its business.

4.      On or about November 2, 2022, Defendants notified Evapco that they were terminating their agreements without cause effective 30 days thereafter.

5.      The agreements at issue provide, *inter alia*, that for a transition period of just 90 days after their termination, the Defendants cannot: (i) solicit orders, distribute or otherwise

promote competing products in their assigned territory or (ii) divert or attempt to divert potential customers or business to a competitor of Evapco.   In addition, the agreements require the Defendants to: (i) return upon termination any tangible items relating to Evapco's confidential business information; and (ii) within 15 days of termination remove any reference to Evapco, its products and its federally registered trademarks from MPSW's website and other promotional materials.

6.      In direct and material breach of these restrictive and other post-termination covenants, MPSW and Schmitt, directly or indirectly through Environ: (i) have been promoting, selling and servicing the products of one of Evapco's major competitors in the same Arizona territory they previously served for Evapco; (ii) failed to return to Evapco its confidential business information upon termination; and (iii) continued to reference Evapco, its products and its trademarks on MPSW's website and other promotional materials beyond the 15-day grace period specified in the Agreements, thereby causing confusion in the marketplace and misleading end-users of EVAPCO® products to believe that MPSW remains an Evapco sales and service representative.

7.      Only when threatened with legal action have MPSW and Schmitt now begun to take steps in effort to comply with some, but not all, of their post-termination obligations under the Agreements and to remove Evapco's trademarks from MPSW's website and other promotional materials – efforts that are in many ways too little, too late given the economic injury and confusion in the marketplace already caused by Defendants' prior misconduct. Moreover, despite demand, Defendants persist in their refusal to comply with their non-compete obligations by actively serving as a sales representative and service center for one of Evapco's major competitors in the same Arizona territory that MPSW previously served for Evapco.

116385\000001\4869-2948-3077.v4

8.     To prevent further imminent and irreparable harm to its business, therefore, Evapco brings this suit to temporarily restrain and enjoin the Defendants from their ongoing breach of their non-compete and other contractual obligations to Evapco, and to recover monetary damages for Defendants' willful infringement of Evapco's trademarks and acts of unfair competition in violation of federal law.

**PARTIES**

9.     Plaintiff Evapco is a corporation organized and existing under the laws of Maryland that maintains it principal place of business in Taneytown, Maryland.

10.     Defendant MPSW is a limited liability company organized and existing under the laws of Delaware with its principal place of business located in Phoenix, Arizona. By virtue of a May 5, 2022 conversion, MPSW is the successor-in-interest to Mechanical Products Southwest Inc. and the agreements at issue in this case.  Defendant's sole member is Meriton LLC, a limited liability company organized under the laws of Texas, with its principal place of business located in Dallas, Texas.  Based on information and belief, no member of Meriton, LLC is a citizen of Maryland.

11.     Frank Schmitt is a citizen and resident of Arizona who resides in Scottsdale, Arizona.

12.     Defendant Environ is a limited liability company organized and existing under the laws of Arizona with its principal place of business located in Phoenix, Arizona.  In anticipation of and/or in connection with the corporate transactions referenced herein, on or about November 29, 2022, Environ Inc. converted to Environ, LLC and became a wholly-owned subsidiary of its sole member, Environ Holdings, Inc. ("Environ Holdings"), a corporation organized and existing under the laws of Arizona with its principal place of business located in Phoenix, Arizona.  With

4

the actual or apparent authority of MPSW, Environ holds itself out to the market as MPSW, and based on information and belief, is a direct or indirect wholly owned subsidiary of Defendant MSPW.

## JURISDICTION & VENUE

13.     This court has subject matter jurisdiction over this action:

a.     pursuant to 28 U.S.C. § 1331, because this case involves a federal question under the laws of the United States;

b.     pursuant to 28 U.S.C. § 1332(a), because the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties;

c.     pursuant to 28 U.S.C. §§ 1338(a) & (b) and 15 U.S.C. § 1121, as this civil action arises under Acts of Congress relating to trademarks and asserts claims of unfair competition joined with substantial and related claims under the federal trademark law; and

d.     pursuant to 28 U.S.C. § 1367, as the federal and state law claims asserted herein are derived from a common nucleus of operative facts.

14.     This Court has personal jurisdiction over Defendants pursuant to Maryland's Long Arm Statute, Md. Cts. & Jud. P. Code Ann., § 6-103, as this action specifically arises out of Defendants' contracts to provide services to a Maryland corporation that are governed by Maryland law.  Moreover, in those contracts, the Defendants contractually consent to exclusive jurisdiction and venue in the state and federal courts of Maryland for any action relating to or arising in connection with said contracts. Alternatively, to the extent that Environ is not acting as an agent or corporate *alter ego* of MPSW, Environ is tortiously interfering with and inducing MPSW and Schmitt to breach the Agreements that specifically give rise to this case and is causing tortious injury to Evapco in this State within the meaning of Maryland's Long Arm Statute and

5

consistent with the due process clause under the Fourteenth Amendment of the United States Constitution.

15.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendants have contractually consented to venue in this Court and a substantial part of the events giving rise to this action occurred in this judicial district.

## <u>FACTS COMMON TO ALL COUNTS</u>

### A.  Evapco's Business and its Marks

16.     Plaintiff Evapco is a leading manufacturer and global supplier of HVAC and refrigeration products and related parts and services headquartered in Taneytown, Maryland. As identified on its website, https://www.evapco.com/products, Evapco designs and manufactures evaporative cooling and industrial refrigeration products (*e.g.*, cooling towers, closed circuit coolers and evaporative condensers) for use in the commercial HVAC, industrial process (including data centers), power generation and industrial refrigeration markets.

17.     Evapco's products are marketed and sold under the EVAPCO® brand which is protected by the following federally registered trademarks:

- EVAPCO® word mark - U.S. Reg. Nos. 6066602; 1222502



- The EVAPCO® logo                    - U.S. Reg. No. 4165125

Evapco's parts and services are marketed and sold under its MR. GOODTOWER® brand, which is protected by the following federally registered trademarks:

- MR. GOODTOWER® word mark – U.S. Reg. No. 1786043



- MR. GOODTOWER® logo                    - U.S. Reg. No.  1853302

(hereinafter collectively the "Marks"). Evapco is the registered owner of the Marks.

18.     Evapco markets and sells products and services in over 50 countries, including the United States, primarily through a network of local, independent sales representatives and service centers.

**B.     MPSW's Tenure as an Evapco Sales Representative and Service Center in Arizona**

19.     For over twenty (20) years, MPSW served as an authorized Evapco sales representative and service center, pursuant to a series of contracts executed over the years – the last of which were executed in 2016 and 2017.

20.     Pursuant to a Sales Representative Agreement dated September 1, 2016 (the "Sales Agreement") (attached as **Exhibit 1**),[1] Evapco retained MPSW as an independent sales representative for certain EVAPCO® Products in two assigned territories in Arizona and New Mexico. (*Exh 1*, §§ 2 & 4).   In October of 2016, the parties agreed to drop the New Mexico Territory from the Sales Agreement.  From October 17, 2016 until the Sales Agreement was terminated on December 2, 2022, MPSW acted as Evapco's sales representative for an "Arizona Territory" contractually defined as the following counties in Arizona: Apache, Cochise, Coconino,

---

[1] Consistent with the "Confidentiality of Terms" provision of the Sales Agreement, the confidential financial terms of the Sales Agreement as set forth in Schedule B thereto are redacted. (*Exh. 1*, § 16, Sch. B thereto). A copy of the Sales Agreement with an un-redacted Schedule B is being filed under seal in connection with Evapco's Motion for Temporary Restraining Order and Preliminary Injunction ("TRO Motion").

Gila, Graham, Greenlee, La Paz, Maricopa, Mohave, Navajo, Pima, Pinal, Santa Cruz, Yavapai and Yuma.

21.     In September of 2017, Schedule A was amended to slightly modify the categories as EVAPCO® "Products that MPSW was authorized to carry" to include products employing "air cooled & adiabatic" technology as follows:

> All Cooling Towers, Closed Circuit Coolers (Evaporative, Dry & Adiabatic), Condensers (Evaporative, Air-Cooled & Adiabatic), WaterTreatment Products and Devices, and Replacement Parts for the Air-Conditioning (HVAC) and Industrial Process Cooling Markets.

(*Exh. 1*, *Amend*. *Sch. A* thereto). Excluded from the representation were EVAPCO® products designed for the "Industrial Refrigeration Market (including the food and beverage industry and Ice Rink projects)" and direct sales by Evapco authorized in Section 3 of the Sales Agreement. (*Id*.)

22.     Pursuant to a later Mr. Goodtower® Service Center Agreement dated April 3, 2017 (the "Service Agreement") (as amended) (attached as **Exhibit 2**)[2], Evapco retained MPSW to serve as "an independent service contractor.  .  . for the sale of Products and Services as identified in Schedule A thereto. . . ." (*Exh. 2*, § 2).  Said "Products and Services" are defined as "Repair, retrofit, service and parts for all Cooling Towers, Closed Circuit Cooler, [and] Evaporative Condensers for the Air Conditioning (HVAC) and Industrial Process Cooling Markets." (*Id.*, *Amend. Sch. A*. thereto).  Like the Sales Agreement, the Service Agreement excludes the "Industrial Refrigeration Market (including the food and beverage industry and Ice Rink projects)" and direct sales by Evapco authorized in Section 4 of the Service Agreement. (*Id.*).  MPSW's

---

[2] Consistent with the "Confidentiality of Terms" provision of the Service Agreement, the confidential financial terms of that Agreement as set forth in Schedules B & C are redacted. (*Exh. 2*, § 17, Sch. B & C).  A copy of the Service Agreement with the un-redacted Schedules B & C is being filed under seal in connection with Evapco's TRO Motion.

assigned Territory in the Service Agreement is comprised of the same Arizona counties referenced in the Sale Agreement. (*Id.*, § 2).

**C.      The Non-Compete and other Post-Termination Provisions of the Agreements**

23.      Both the Sales Agreement and the Service Agreement (the "Agreements") contain a series of restrictive covenants and confidentiality provisions that are nearly identical.

24.      The Agreements contain a "Non-Compete" provision that provides in pertinent part:

> <u>Non-Compete.</u>    During the Term, and for ninety (90) days thereafter, Representative shall not, directly or indirectly, in any capacity, divert, or attempt to divert, to any competitor of EVAPCO any potential customer or business of EVAPCO by direct or indirect inducement or otherwise. During the Term and *for ninety (90) days thereafter,* Representative *shall not directly or indirectly,* (i) *solicit orders for, distribute or otherwise promote in the Territory any goods which are functionally equivalent to, or competitive with, the Products* . . .

(*Exh. 1*, § 7); (*Exh. 2*, § 8) (replacing the term "Representative" with "Mr. Goodtower® Service Center") (emphasis added). The Agreements expressly "acknowledge that the foregoing restrictions are reasonable as to duration, geographic scope and scope of activity and do not impose a greater restraint than is necessary to protect the good will and business interests of EVAPCO." (*Id.*).

25.      The Agreements also contain a "Confidential Information; Return of Property" provision that provides, in pertinent part:

> <u>Confidential information; Return of Property.</u> During the Term and thereafter, Representative shall not, directly or indirectly, disclose or use (other than as necessary in the performance of its services hereunder) any confidential or proprietary information of EVAPCO whether learned by Representative prior to the date hereof or hereafter (collectively, "Confidential Information"), including customer and prospect lists, the identity of suppliers, sales and marketing information, research and development activities, compositions, raw materials, product specifications, pricing information, marketing strategies and product development plans. . . . *Upon* expiration or *termination*

*of this Agreement,* or earlier upon EVAPCO's request, Representative shall **immediately deliver to EVAPCO all tangible items** in Representative's possession or control **that contain or relate to the Confidential Information and all other items concerning the Business, including all advertising and promotional materials, all Product samples, EVAPCO project files and customer lists**.

(*Exh. 1*, § 8) (*Exh. 2*, § 9) (replacing the term "Representative" with "Mr. Goodtower® Service Center") (emphasis added).

26.     In addition, the Agreements require that upon termination:

Representative shall cease identifying or representing itself as an EVAPCO Representative, and **within fifteen (15) days of termination** of this Agreement, Representative shall remove any reference to EVAPCO or its products from any Representative promotional materials, including without limitation any website, brochures, presentations or other materials.

(*Exh. 1*, § 8); (*Exh.* 2, § 9) (replacing the term "Representative" with "Mr. Goodtower® Service Center" and including an additional directive to remove any reference to the "Mr. Goodtower® mark" from MPSW's website and other promotional materials).

27.     The Agreements further provide that for purposes of the non-compete and confidentiality provisions thereof, the terms "Representative" and "Mr. Goodtower® Service Center" include "the individual that signs this agreement on behalf of [MPSW] and the obligations therein inure to any signatory personally as well as to the company." (*Exh. 1*, § 7; *Exh. 2*, § 8). Thus, as Defendant Schmitt signed the Agreements on behalf of MPSW, both he personally and MPSW are bound by the non-compete and confidentiality provisions of the Agreements.

28.     In the Agreements, MPSW and Schmitt  expressly "acknowledge[] that irreparable injury would be caused by any breach or threatened breach of the foregoing [non-compete and confidentiality provisions] and that such injury would be inadequately compensable in damages and agree[] that EVAPCO shall be entitled to any and all relief, including injunctive relief, as may be appropriate to protect its interests." (*Exh. 1*, § 7; *Exh. 2*, § 8).  The Agreements further exclude

the recovery of "any consequential, indirect, incidental, special or punitive damages". (*Exh. 1*, § 18; *Exh. 2*, § 19).

29.     To facilitate MPSW's performance of its service center obligations, the Service Agreement further grants MPSW a "revocable, non-exclusive, royalty-free, non-assignable license to the Mr. Goodtower® or Evapco® trademarks; . . ." (Exh. 2, § 3).  By its terms, this license expires upon termination of the Service Agreement (*Id.*), but MPSW is afforded an additional 15 days to remove any references to the Marks from its website and other promotional materials. (*Id.*, § 9).

30.     "Either party may terminate the Agreement[s] for any reason whatsoever by providing the other party with 30 days' advance notice of termination, in which case the Termination Date shall be the 30th calendar day for the date the party received such Notice" (*Exh. 1*, § 13); (*Exh. 2*, § 14).

31.     In connection with any such termination, however, the Agreements impose upon MPSW (not Schmitt personally) certain additional post-termination obligations. The Sales Agreement provides, in part:

> a)  For a period of thirty (30) days following the Termination Date, Representative shall refer to EVAPCO all inquiries, leads, requests for quotes, orders or potential orders pertaining to Products.
>
> b)  Once a party issues a termination notice, Representative is no longer authorized to issue quotes, bids, solicit orders, or otherwise attempt to sell Products.
>
> c)  Within fifteen (15) days of issuing or receiving a termination notice, Representative shall provide EVAPCO with a list of all projects that Representative quoted prior to the termination notice (the "Protected List"), and that have not yet resulted in an order confirmed by EVAPCO.

116385\000001\4869-2948-3077.v4

d)  Within fifteen (15) days of issuing or receiving a termination notice, EVAPCO shall provide Representative with a list of all projects where there is a closed sale such that Representative will be entitled to a commission once EVAPCO has received payment for such sale (the "Closed Sales list"). . .

(*Exh. 1*, § 13)

32.    The Service Agreement provides in pertinent part:

a)  For a period of thirty (30) days following the Termination Date, Mr. Goodtower® Center shall refer to EVAPCO all inquiries, leads, requests for quotes, orders or potential orders pertaining to Products.

b)  Once a party issues a termination notice, Representative is no longer authorized to issue quotes, bids, solicit orders, or otherwise attempt to sell Products, or ***to use the Mr. Goodtower® or Evapco® trademarks.***

(*Exh. 2*, § 14) (emphasis added).

33.    The Agreements are governed by Maryland law, and the parties thereto consent to the exclusive jurisdiction of the state and federal courts of Maryland for any suit relating to or arising under the Agreements. (*Exh. 1*, § 21; *Exh. 2*, § 22).

**D.    Defendants' Termination and Material Breach of the Agreements and Infringement of the Marks**.

34.    During the term of the Agreements, the parties enjoyed an amicable and mutually beneficial business relationship.  Although in late 2021 or early 2022, MPSW was acquired by a Texas-based company, Meriton LLC ("Meriton"), MPSW continued to represent and service Evapco Products pursuant to the Agreements.

35.    Traditionally, the Arizona Territory previously assigned to MPSW has been one of the top three markets for Evapco Products in the United States with annual sales of an estimated $10 million in recent years.  For example, MPSW's sales of Evapco Products and parts during the 3-month period from December 2021 through February of 2022, as well as during the 3 months

immediately preceding the termination (*i.e.*, September – November of 2022) exceeded $ 3 million dollars. Also, commissions paid to MPSW during each of those time periods exceeded $90,000.

36.     During a call on November 2, 2022, as confirmed by a letter dated November 3, 2022 (attached as **Exhibit 3**), Schmitt notified Evapco of MPSW's decision to terminate the above-referenced Agreements without cause.  In that letter, Schmitt represented that MPSW's decision to terminate the Agreements was "based solely on the local Arizona business situation and market," and assured Evapco that:

> [W]e fully intend to execute during the next 30 days, and you have my word we will support all work, equipment, *etc*. 100% to the best of our ability to make this transition as smooth as possible. . . . Please confirm what our last day to enter orders is also if you would.

(*Exh. 3*).

37.     In response, by letter dated November 15 (attached as **Exhibit 4),** Evapco's Vice President of North American Sales, James B. Facius, informed MPSW that notwithstanding that the Agreements required MPSW to cease selling Evapco Products, parts and services immediately upon sending the notice of termination (*Exh, 1*, §13(b)); (Exh. 2, § 14(b)), MPSW could "continue promoting, quoting and supplying EVAPCO to the Arizona market through November 30, 2022." (*Exh. 4*). In so doing, however, Mr. Facius instructed MPSW, in part:

> "Effective December 1, 2022, all EVAPCO branding should be removed from your websites, vehicles, literature etc.  All EVAPCO parts, pricing, catalogs and other Evapco information should be sent to my attention no later than December 2, 2022. All Evapco confidential information should be deleted from your computer systems.

(*Exh. 4*).

38.     Notwithstanding Schmitt's assurance that he and MPSW would attempt to "make this transition as smooth as possible," the Defendants failed to comply with Mr. Facius' requests and their other post-termination obligations to Evapco under the Agreements.

39.     In direct and material breach of the Agreements, the Defendants:

a)  refused to return on the Termination Date, all tangible items in their possession or control that "contain or relate to the Confidential Information and all other items concerning the Business, including all advertising and promotional materials, all Product samples, EVAPCO project files and customer lists" (*Exh. 1*, § 8) (*Exh. 2*, § 9);

b)  refused to remove either on December 1, 2022 as specified by Mr. Facius or by the contractually required date of December 16, 2022, any reference to Evapco, its Products or its Marks from MPSW's website and on other promotional materials. (*Exh. 1*, § 8) (*Exh. 2*, § 9). In fact, as reflected in the attached screenshots of MPSW's website taken on December 19, 2022 (attached as **Exhibit 5**), on December 21, 2022 (attached as **Exhibit 6**), and on December 22, 2022 (attached as **Exhibit 7**), MPSW continued to reference Evapco's Products and display its Marks on the MPSW website;

c)  failed to provide to Evapco on or before December 16, 2022, or since, its list of all projects that MPSW has quoted prior to the termination and that have not yet resulted in an order confirmed by EVAPCO (the "Protected List"), as required by Section 13(c) of the Sales Agreement.

40.     Moreover, MPSW and Schmitt have failed to honor their non-compete obligations under the Agreement. On or shortly after the Termination Date of the Agreements, MPSW acquired or otherwise became affiliated with Environ. Based on information and belief, Environ is now a direct or indirect wholly owned subsidiary of MPSW and is under the total control and domination MPSW and/or Schmitt.  In fact, in describing MPSW's then anticipated acquisition of Environ, Schmitt stated that Environ's business would be "under MPSW" and he would be President of the combined company.

41.     As reflected on its website, https://environhvac.com, prior to its acquisition by MPSW, and since its acquisition or other affiliation with MPSW, Environ "proudly represents" Baltimore Aircoil Company, Inc. ("BAC"), and promotes and sells BAC's line of cooling towers and closed circuit fluid coolers and evaporative condensers – products that directly compete with Evapco's Products.

42.     BAC is a direct competitor to Evapco both globally and within MPSW's formerly assigned Arizona Territory. As reflected on its website, https://baltimoreaircoil.com/products, BAC is a manufacturer and supplier of industrial HVAC and refrigeration products and related parts and services, including, but not limited to, cooling towers, closed-circuit coolers, and evaporative condensers for the HVAC and industrial process cooling markets in the United States and elsewhere.

43.     Since MPSW's acquisition of Environ, and as confirmed as recently as December 15, 2022 and again on December 29, 2022, when one calls the contact number for Environ as listed on its website (https://environhvac.com) – i.e.,  (623) 760-9200, a company representative answers the phone by stating "Thank you for calling MPSW."   Thus, with the actual or apparent authority of MPSW and Schmitt, Environ holds itself out to the public as MPSW and, in so doing, acts as the corporate *alter ego* of MPSW while actively representing, promoting and selling the competing products of BAC. Thus, Environ currently serves as mere temporary instrumentality of MPSW in representing and servicing competing BAC products, while the Defendants attempt to run out the clock on the 90-day transition period referenced in the non-compete provisions of the Agreements.

44.     Although not currently aware of whether one or more pre-acquisition employees of Environ are now employed by MPSW, at least one MPSW sales engineer who handled Evapco's account for years prior to its termination acknowledged to Evapco that "he was having trouble

telling his customers that he now represented BAC." That sales engineer further stated that even though Environ maintained separate offices from MPSW due to space limitations, if one called the Environ office number, they would answer the phone as MPSW.

45.     Thus, MPSW, under the direction and control of Schmitt, is both directly through its own employees or indirectly through its agent and/or corporate *alter ego* Environ, serving  as an independent sales representative for BAC in the Arizona Territory referenced in the Agreements.  In that role, Defendants directly or indirectly solicit orders for and otherwise promote BAC products that are functionally equivalent to, or competitive with the Products that MPSW previously promoted, sold and serviced for Evapco. (*Exh. 1*, § 7); (*Exh. 2*, § 8).

46.     In so doing, the Defendants are inherently diverting potential customers and business away from Evapco and to BAC. After all, customers and potential customers of HVAC and industrial cooling products do not usually specify the brand of equipment they seek to purchase and even if they do, sales representatives will often attempt to sell them the competing brand they carry – in this case BAC.  Thus, every customer opportunity or lead developed by MPSW and/or Environ while acting with actual or apparent authority of MPSW that has been or is being steered to BAC during the 90-day transition period inherently constitutes an improper diversion of potential customers and business away from Evapco in direct and material breach of the Agreements. (*Exh. 1*, §§ 7, 13(a)); (*Exh. 2*, §§ 8, 14(a)).

47.     By promoting, selling and/or distributing BAC products, while holding itself out to the public as MPSW, Environ serves as a mere instrumentality and *alter ego* of MPSW in representing competing BAC products. Environ has ceased to operate independently of MPSW and, therefore, has bound itself by the Agreements and is jointly and severally liable for Defendants' breach of those Agreements as if a contracting party thereto.

48.     In addition to these material breaches of the Agreements, the failure of MPSW to remove Evapco's Marks from its website and other promotional materials upon termination or within the 15-day grace period under the Agreements constitutes willful infringement of the Marks that was likely to cause and/or, in fact, caused confusion in the marketplace as to whom actual or potential customers should contact in Arizona for the purchase of Evapco Products, parts and service.

**E.      Evapco's Demand that Defendants Cease and Desist their Misconduct**

49.     After learning of the Defendants' acquisition of Environ and its other misconduct detailed herein, by letter from its counsel dated December 18, 2022 (attached here to as **Exhibit 8**), Evapco demanded that the Defendants cease and desist their ongoing violations of the Agreements and assurances of compliance moving forward.

50.     By letter dated December 27, 2022, Defendants MPSW and Schmitt, through counsel, attempted to justify their failure to return tangible items relating to Evapco's Confidential Information and its Business and to remove references to Evapco's Products and its Marks from its website and other promotional materials by the applicable contractual deadlines.

51.     Even in their counsel's letter, however, MPSW and Schmitt admit retaining a confidential "list of mechanical contacts and engineers with whom MPSW has interacted with during the last year" and "several hundred pounds of promotional materials" that were not previously returned in compliance with the Agreements.  Furthermore, conspicuously absent from counsel's letter is any mention of Evapco's confidential project files – paper copies of which one MPSW sales engineer had previously told and showed Evapco that he maintained in his office. Such historical project information belonging to Evapco can inform and predict a customer's needs for replacement equipment over time, as well as its buying patterns and preferences.

52.     Although in their counsel's letter, Defendants assure Evapco that they have or will remove any references to Evapco or its Products from any of their promotional materials, including without limitation, any website, brochures, presentations or other materials, they implicitly acknowledge that they did not so by the applicable contractual deadline of December 17, 2022. (*Exh*. 1, § 8); (*Exh*. 2, § 9).  Thus, while Defendants have now assured Evapco that they are taking steps to comply with these contractual obligations – steps that they should have taken weeks ago– they have not yet completed all of those steps. Thus, the Defendants have been and continue to be in material breach of the Agreements.

53.     Finally and most importantly, in their counsel's letter, MPSW and Schmitt do not even mention Environ, much less explain the structure and nature of its recent acquisition of or affiliation with Environ. Rather, MPSW and Schmitt simply deny violating their non-compete obligations under the Agreements without any mention of Environ's continued promotion and sale of competing BAC products, while expressly holding itself out to anyone who calls Environ's main line that they have reached MPSW.

54.     By letter dated December 30, 2022, Evapco responded to MPSW's counsel. In light of the refusal of MPSW and Mr. Schmitt to cease and desist directly or indirectly through Environ the promotion and sale of competing BAC products in the Arizona Territory, counsel for Evapco alerted MPSW's counsel of the imminent filing of this lawsuit.

**F.      The Imminent Threat of Irreparable Harm to Evapco and Likelihood of Confusion in the Marketplace**

55.     As a direct and proximate result of the Defendants' material breach of the Agreements and MPSW's willful infringement of the Marks, the Defendants have deprived Evapco of the agreed upon 90-day period during which the Defendants would not promote and sell competing products and services in the Territory.

18

56.     This 90-day period would have given Evapco a fair opportunity to retain the services of a replacement sales representative and service center in the Territory, to whom Evapco could transition the business and customers previously serviced by the Defendants. While Evapco has retained a California-based company, California Hydronics Corporation ("CHC"), to represent and service its Products in the Arizona Territory formerly assigned to MPSW, CHC needs the full 90-day period to effectively complete the transition of Evapco's customer and business from MPSW.   Evapco's ability to efficiently make this transition would have been facilitated by the Defendants' prompt return of Evapco's Confidential Information (including its project files) and its Protected List within the timeframes set forth in the Agreements.

57.     By failing to return that information promptly and continuing to falsely represent itself as an authorized Evapco sales representative and service center, while simultaneously representing Evapco's direct competitor in the Arizona Territory, the Defendants: (i) have unfairly delayed Evapco's transition to replacement representative in the Arizona Territory; (ii) have hampered Evapco's ability to maintain its reputation, goodwill and advantageous business relationships with its customers in the Arizona Territory; (iii) have been likely to cause and/or have caused confusion in the marketplace as to whom actual or potential customers should contact in Arizona for the purchase of Evapco Products, parts and services; and (iv) have given MPSW and BAC an unfair head-start and competitive advantage in the Territory.

58.     The injury caused by the Defendants' breaches of their non-compete and other post-termination obligations, coupled with MPSW's willful infringement of the Marks, is the precise type of imminent and irreparable harm that Defendants acknowledged would occur should they breach they Agreements. (*Exh*. 1, § 8); (*Exh*. 2, § 9).   Only now, when threatened with legal action, are the Defendants engaged in a half-hearted attempt to comply with some, but not all,

of their obligations under the Agreements.  These efforts are too little, too late, and do nothing

to address the primary issue of their representation and service of BAC's competing products

during the 90-day restrictive period.

59.     As Defendants further acknowledged in their Agreements, there is no remedy at

law adequate to prevent the imminent and irreparable harm occasioned by their ongoing

misconduct, thereby necessitating the entry of a temporary restraining order and/or preliminary

and permanent injunctive relief, in addition to any other remedies afforded to Evapco under

statute, in equity or at law.  The need for injunctive relief is particularly acute given the short

90-day restrictive period of the Defendants' non-compete obligations and the express disclaimer

of consequential damages under the Agreements.

**Count I**
**Breach of Contract**
**<u>(against MPSW & Schmitt)</u>**

60.     Plaintiff Evapco hereby re-alleges, and incorporates herein by reference, the

allegations set forth paragraphs 1 through 59 above.

61.     The Agreements are valid and enforceable contracts under governing Maryland

law.

62.     Evapco has been and remains in full compliance with its contractual obligations

under the Agreements.

63.     By and through the course of conduct detailed in the Complaint, Defendants MPSW

and Schmitt have breached and/or continue to breach their non-compete, confidentiality and other

post-termination obligations under the Agreements. (*Exh. 1*, §§ 7, 8, 13(a)-(d)); (*Exh. 2*, §§ 8, 9,

14(a)-(b)).

20

64.     In material breach of their non-compete obligations under the Agreements, Defendants MPSW and Schmitt directly and/or indirectly through Environ (acting as their actual or apparent agent and/or corporate *alter ego*) have been and are continuing to promote and sell BAC products that directly compete with Evapco Products during the 90-day transition period referenced in the Agreements.

65.     As the direct and proximate result of the material breach of the Agreements by MPSW and Schmitt, Evapco has suffered and, unless temporarily restrained and preliminarily enjoined by this Court, will continue to suffer irreparable harm to its business and its brand, as well as its ability to maintain its reputation, goodwill and advantageous business relationships with its customers in the Arizona Territory.

66.      There is no remedy at law adequate to prevent the threatened or actual irreparable harm occasioned by MPSW's and Schmitt's breach of contract, thereby necessitating the entry of a temporary restraining order and/or preliminary and permanent injunctive relief, as well as an award of monetary damages to compensate Evapco for the economic injury sustained prior to entry of the requested injunctive relief.

67.     Furthermore, given that the Defendants MPSW and Schmitt have not complied with and remain in material breach of their non-compete obligations under the Agreements, this Court should equitably toll and extend the 90-day restrictive period of the non-compete covenants to begin upon this Court's entry of the TRO or other injunction and ending 90-days thereafter, assuming that the Defendants remain in compliance with said Order.

### COUNT II
#### *Alter Ego* Liability for Breach of Contract
#### (Against Environ)

68.     Plaintiff Evapco hereby re-alleges, and incorporates herein by reference, the

allegations set forth in paragraphs 1 through 67 above.

69.     As detailed above, Environ is directly or indirectly owned, dominated and controlled by MPSW.

70.     Under the direction of and/or with actual or apparent authority of MPSW and Schmitt, Environ holds itself out to the public as MPSW, while promoting and selling competing products of BAC in the Arizona Market during the 90-day transition period referenced in the Agreements. In so doing, Environ serves as mere temporary instrumentality of MPSW in representing and servicing competing BAC products, while the Defendants attempt to run out the clock on the 90-day transition period referenced in the non-compete provisions of the Agreements.

71.     As a mere *alter ego* and instrumentality of MPSW, Environ has ceased to operate independently of MPSW and, therefore, has bound itself by the Agreements and is jointly and severally liable for Defendants' breach of those Agreements as if a contracting party thereto.

72.     As the direct and proximate result of the material breach of the Agreements by Environ (acting as corporate *alter ego* for MSPW and Schmitt), Evapco has suffered and, unless temporarily restrained and preliminarily enjoined by this Court, will continue to suffer irreparable harm to its business and its brand, as well as its ability to maintain its reputation, goodwill and advantageous business relationships with its customers in the Arizona Territory.

73.     There is no remedy at law adequate to prevent the threatened or actual irreparable harm occasioned by Defendants' breach of contract, thereby necessitating the entry of a temporary restraining order and/or preliminary and permanent injunctive relief, as well as an award of monetary damages to compensate Evapco for the economic injury sustained prior to entry of the requested injunctive relief.

## COUNT III
### Tortious Interference with Contract
### (Alternative Count Against Environ)

74.     Plaintiff Evapco hereby re-alleges, and incorporates herein by reference, the allegations set forth in paragraphs 1 through 73 above.

75.     In the alternative to Count II, to the extent that Environ is not a direct or indirect subsidiary of MPSW or otherwise acting as MPSW's *alter ego*, Environ's promotion and sale of competing BAC products while holding itself out as MPSW constitutes a tortious interference with the non-compete provision of the Agreements.

76.     The Agreements are valid and enforceable contracts under Maryland law.

77.     Environ has knowledge of and is fully aware of the non-compete provisions of those Agreements.

78.     By and through its promotion and sale of competing BAC products while holding itself as MPSW, Environ is inducing MPSW and Schmitt to breach the non-compete provisions of the Agreement and/or otherwise interfering with those contractual obligations.

79.     As the direct and proximate result of Environ's tortious interference with the non-compete provisions of the Agreements, Evapco has suffered and, unless temporarily restrained and preliminarily enjoined by this Court, will continue to suffer irreparable harm to its business and its brand, as well as its ability to maintain its reputation, goodwill and advantageous business relationships with its customers in the Arizona Territory.

80.      There is no remedy at law adequate to prevent the threatened or actual irreparable harm occasioned by Environ's tortious interference with contract, thereby necessitating the entry of a temporary restraining order and/or preliminary and permanent injunctive relief, as well as an award of monetary damages to compensate Evapco for the economic injury sustained prior to entry of the requested injunctive relief.

116385\000001\4869-2948-3077.v4

## COUNT IV
### (Federal Trademark Infringement – 15 U.S.C. § 1114)
### (against MPSW)

81.     Plaintiff Evapco hereby re-alleges, and incorporates herein by reference, the allegations set forth in paragraphs 1 through 80 above.

82.     The Marks are valid trademarks federally registered with the United States Patent & Trademark Office ("PTO").

83.     Plaintiff Evapco is owner of the Marks.

84.     Upon termination of the Agreements, MPSW's license to use the Marks terminated.

85.     By continuing to use the Marks in interstate commerce both on its website and in other promotional materials after termination of the Agreements and the 15-day grace period granted therein, MPSW willfully infringed the Marks within the meaning of 15 U.S.C. § 1114(1).

86.     Evapco's unlicensed use of the Marks was likely to cause and/or did cause confusion among actual or potential customers as to whom they should contact in Arizona to purchase EVAPCO® Products and MR. GOODTOWER® parts and services.

87.     As the direct and proximate result of MPSW's trademark infringement, Evapco has suffered and will continue to suffer, economic harm to its business and its brand, as well as its ability to maintain its reputation, goodwill and advantageous business relationships with its customers in the Arizona Territory.

## COUNT V
### (Unfair Competition/False Advertising – 15 U.S.C. § 1125(a))
### (against MPSW)

88.     Plaintiff Evapco hereby re-alleges, and incorporates herein by reference, the allegations set forth paragraphs 1 through 87 above.

89.     Evapco is the owner of the federally registered Marks.

116385\000001\4869-2948-3077.v4

90.     By refusing to stop using and displaying Evapco's Marks and continuing to offer Evapco Products and services on its website and in other promotional materials after termination of the Agreements and the 15-day grace period granted therein, Defendant MPSW falsely represented itself in interstate commerce as an authorized Evapco sales representative and service center.

91.     By and through this false advertising, Defendant MPSW was likely to cause and/or did cause confusion among actual or potential customers as to whom they should contact in Arizona to purchase EVAPCO® Products and MR. GOODTOWER® parts and services.

92.     Defendant MPSW's conduct in this regard was knowing, intentional and willful, and, based on information and belief, for the purpose of unfairly competing with Evapco.

93.     As the direct and proximate result of MPSW's acts of false advertising and unfair competition, Evapco has suffered and will continue to suffer economic harm to its business and its brand, as well as its ability to maintain its reputation, goodwill and advantageous business relationships with its customers in the Arizona Territory.

## PRAYER FOR RELIEF

**WHEREFORE**, Evapco prays for judgment against the Defendants and, as relief therefore, respectfully requests:

### AS TO COUNT I

A.  A TRO, and preliminary and permanent injunctions ordering the Defendants to:

1) immediately cease and desist from directly or indirectly through Environ or any other affiliate from soliciting orders for, distributing or otherwise promoting the products of BAC or any other Evapco competitor in the Territory for a period of 90 days from the date of this Court's entry of said Order;

2) immediately cease and desist from directly or indirectly through Environ or any other affiliate diverting or attempting to divert to BAC or any other competitor of

Evapco any potential customer or business of Evapco for a period of 90 days from the date of the Court's entry of said Order;

3) immediately refrain from disclosing any Evapco Confidential Information (as defined in the Agreements) still in their possession, custody or control to BAC or to any other third-party or from using any such Confidential Information for any purpose whatsoever;

4) immediately return to Evapco all tangible items in their  possession, custody or control that contain or relate to Evapco's Confidential Information (as defined in the Agreements), including, but not limited to Evapco's project files and further provide to Evapco its Protected List as required by Section 13(c) of the Sales Agreement;

5) to the extent not already completed, immediately remove and provide written confirmation to Evapco that MPSW has removed any reference to Evapco, its Products and its Marks from MPSW's website and any other promotional materials;

B.      In addition to the injunctive relief set forth in subsection A above, an award of contract damages (exclusive of any consequential, indirect, incidental, or special damages otherwise excluded under the Agreement) in excess of $75,000 to compensate Evapco for the economic injury it has sustained as a result of Defendants breach of the Agreements suffered prior to the issuance of the requested injunctive relief; and

C.      Any and all other and further relief in equity or at law as justice and cause require.

### As to Counts II and III

A.      A TRO, and preliminary and permanent injunctions ordering the Defendant Environ to:

1) immediately cease and desist from soliciting orders for, distributing or otherwise promoting the products of BAC in the Territory for a period of 90 days from the date of this Court's entry of said Order;

2) immediately cease and desist from diverting or attempting to divert to BAC or any other competitor of Evapco any potential customer or business of Evapco for a period of 90 days from the date of the Court's entry of said Order.

B.      In addition to the injunctive relief set forth in subsection A above, an award of contract damages as permitted under the Agreement or alternatively in tort in excess of $75,000 to compensate Evapco for the economic injury it has sustained as a result of Defendant Environ's breach of the Agreements or alternatively for its tortious interference with contracts suffered prior to the issuance of the requested injunctive relief; and

C.  Any and all other and further relief in equity or at law as justice and cause require.

### **As to Counts IV and V**

A.      An Order pursuant to 15 U.S.C. § 1117(a) providing for (i) the disgorgement of MPSW's profits on commissions earned on sales of BAC Products and services to customers who initially contacted MPSW believing it to still be an authorized Environ sales representative and service center; (ii) an award of any damages sustained by Evapco as a result of MPSW's infringement of its Marks, false advertising and unfair competition; and (iii) an award of treble damages, together with an award of Evapco's reasonable attorneys' fees, costs and pre-judgment interest to the extent permitted by 15 U.S.C. §1117(a) and/or §1117(b); or

B.      As to Count VI only, and in the alternative to the damages referenced in subparagraph A above, statutory damages as permitted by 15 U.S.C. § 1117(c); and

C.      Any and all other and further relief as justice and its cause require.

116385\000001\4869-2948-3077.v4

## DEMAND FOR JURY TRIAL

Plaintiff, Evapco Inc., hereby request a trial by jury on all claims so triable.


Respectfully submitted,


_____/s/_____
John E. McCann, Jr.
Federal Bar No. 10028
**MILES & STOCKBRIDGE P.C.**
100 Light Street
Baltimore, Maryland 21202
Telephone:     (410) 727-6464
Facsimile:     (410) 385-3700
e-mail: jmccann@milestockbridge.com

28