IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| EVAPCO, INC., | * |
| Plaintiff, | * |
| v. | *  Civil Case No.: SAG-22-3375 |
| MECHANICAL PRODUCTS SOUTHWEST, LLC, et al., | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Evapco, Inc. ("Evapco"), a Maryland-based manufacturer of heating, ventilation, and air conditioning products, filed the instant action arising out of the termination of its contracts with its former sales representative in Arizona, Mechanical Products Southwest, LLC ("MPSW"). ECF 1. Presently pending before this Court is Evapco's Motion for a Temporary Restraining Order and Preliminary Injunction ("the Motion"). ECF 2. The Motion seeks to enforce certain post-termination non-compete obligations set forth in the parties' contracts. ECF 2-1 at 17. Defendants MPSW, its principal, Frank Schmitt, and Environ, LLC (collectively, "Defendants"), have filed oppositions, ECF 20, 21, and Evapco filed a reply, ECF 29. This Court has considered those filings and the evidence submitted by the parties, as well as counsels' arguments presented at a hearing on January 19, 2023. For the following reasons, this Court will deny Evapco's motion to the extent that it seeks a temporary restraining order ("TRO"), but will stay consideration of whether to grant a preliminary injunction. Another hearing will be scheduled for Thursday, February 9, 2023, at 10:00 a.m., to consider Evapco's preliminary injunction request. As instructed at the January 19 hearing, the parties are to conduct expedited discovery in the interim.

I.  **BACKGROUND**

Evapco is a manufacturer and global supplier of heating, ventilation, and air conditioning ("HVAC") and refrigeration products headquartered in Taneytown, Maryland. ECF 1 ¶ 2. For more than 20 years, MPSW served as an independent sales representative and authorizer servicer of certain Evapco products in Arizona. *Id*. ¶¶ 3, 19. Pursuant to a series of written contracts, Evapco allowed MPSW to use its trademarks in promoting, selling, and servicing Evapco products, and also provided MPSW and Schmitt access to certain confidential business information. *Id*. ¶ 3. Relevant to the instant Motion, the parties' most recent set of sales and services agreements ("the Agreements") each included a nearly identical non-compete provision requiring that, for the duration of the Agreements and for 90 days thereafter, MPSW:

- "shall not, directly or indirectly, in any capacity, divert, or attempt to divert, to any competitor of EVAPCO any potential customer or business of EVAPCO by direct or indirect inducement or otherwise[]"; and

- "shall not directly or indirectly, . . . solicit orders for, distribute or otherwise promote in the Territory any goods which are functionally equivalent to, or competitive with, [Evapco] Products."

*See* ECF 1-2 § 7; ECF 1-3 § 8. The Agreements also allowed either party to terminate them for any reason by providing 30 days advance notice. ECF 1-2 § 13; ECF 1-3 § 14.

On November 2, 2022, Schmitt notified Evapco that MPSW was terminating the Agreements without cause, effective 30 days thereafter. ECF 1 ¶ 36; ECF 1-4. Around the time the termination became effective, MPSW acquired Environ. ECF 1 ¶ 40; ECF 21-1 ¶ 7. Prior to the acquisition, Environ had been operating as the sales representative for one of Evapco's competitors, Baltimore Aircoil Company ("BAC"). ECF 1 ¶¶ 41, 42; ECF 21-1 ¶ 8. Evapco now claims that Defendants are either directly (through MPSW and Schmitt) or indirectly (through Environ, as MPSW's *alter ago*) violating the Agreements' non-compete provisions by selling,

distributing, or otherwise promoting BAC products during the 90-day protected period. ECF ¶¶ 45-47. Evapco also contends that MPSW breached the Agreements by failing to (1) immediately return any confidential information or other materials concerning Evapco's business, and (2) timely remove all references to Evapco from its website and promotional materials. ECF 1 at ¶ 39.

On December 30, 2022, Evapco filed the instant suit asserting, *inter alia*, a breach of contract claim against MPSW and Schmitt (collectively, the "MPSW Defendants") and alternative claims again Environ for *alter ego* breach of contract and tortious interference with contract.[1] ECF 1 ¶¶ 60-80. The following day, Evapco filed the instant Motion, asking the Court to "temporarily restrain and preliminarily enjoin the Defendants from continuing to represent and service BAC's competing products in MPSW's former Arizona territory during the 90-day transition period" mandated by the Agreements' non-compete provision. ECF 2 ¶ 5. The Motion contended that "[b]y failing to comply with their non-compete and their other post-termination obligations, Defendants have caused and continue to cause imminent and irreparable harm to Evapco's goodwill and advantageous business relationships with its customers." *Id*. ¶ 6. In support of the motion, Evapco cited evidence, including sworn declarations, indicating that Environ was holding itself out to the public as MPSW and soliciting BAC orders. ECF 2-2 ¶ 27; ECF 2-16 at ¶¶ 3-4.

The MPSW Defendants and Environ each filed oppositions. ECF 20, 21. Notably, the MPSW Defendants assert in their opposition that BAC terminated its relationship with Environ on December 29, 2022, and therefore Environ is no longer authorized to sell BAC products. ECF 21 at 9, 11; ECF 21-1 ¶ 9. Accordingly, the MPSW Defendants contend that injunctive relief is unnecessary and, in the alternative, that Evapco cannot meet the standard for a TRO or preliminary

---

[1] The Complaint also includes federal claims against MPSW for trademark infringement and unfair competition. *See* ECF 1 ¶¶ 81-93. Those claims are not at issue as part of the instant Motion.

injunction. Environ also argues in its opposition that this Court lacks personal jurisdiction to enter injunctive relief against it.

## II. LEGAL STANDARDS

"Temporary restraining orders and preliminary injunctions serve similar functions and are subject to substantially the same legal standards." *GlaxoSmithKline, LLC v. Brooks*, No. 8:22-CV-00364-PWG, 2022 WL 2916170, at *1 (D. Md. July 25, 2022). "A preliminary injunction is distinguished from a TRO only by the difference in the required notice to the nonmoving party, and by the duration of the relief it provides. . . . Temporary restraining orders are of limited duration, whereas preliminary injunctions are indefinite." *Id.* (internal citations omitted).

A TRO or a preliminary injunction is warranted when the movant demonstrates four factors: (1) that the movant is likely to succeed on the merits, (2) that the movant will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities favors preliminary relief, and (4) that injunctive relief is in the public interest. *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *Wilson v. Williams*, 2019 WL 4942102, at *1 (D.S.C. Oct. 8, 2019). The movant must establish all four elements in order to prevail. *Pashby v. Delia*, 709 F.3d 307, 320–21 (4th Cir. 2013).

A TRO, much like a preliminary injunction, affords "'an extraordinary and drastic remedy' prior to trial." *Ultimate Outdoor Movies, LLC v. FunFlicks, LLC*, 2019 WL 2642838, at *6 (D. Md. June 27, 2019) (quoting *Munaf v. Green*, 553 U.S. 674, 689–90 (2008)); *see also MicroStrategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (stating preliminary injunctive relief is an "extraordinary remed[y] involving the exercise of very far-reaching power [that is] to be granted only sparingly and in limited circumstances."). Because preliminary

injunctions are intended to preserve the status quo during the pendency of litigation, injunctions that "alter rather than preserve the status quo" are particularly disfavored. *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 216 n.8 (4th Cir. 2019). Courts should grant such "mandatory" preliminary injunctions only when "the applicant's right to relief [is] indisputably clear." *Id.*

### III.  ANALYSIS

#### A.  Personal Jurisdiction over Environ

As a threshold matter, Environ asserts that this Court lacks personal jurisdiction over it. "To enter a judgment that adjudicates the rights of a party, a federal court must have personal jurisdiction over that party." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 228 (4th Cir. 2019). Environ argues that this Court lacks specific personal jurisdiction because Environ is based in Arizona, does no business in Maryland, and otherwise has no contacts with the state. ECF 20 at 1-2, 4-8. Evapco, on the other hand, argues that personal jurisdiction is proper on the grounds that Environ is in fact functioning as the *alter ego* of MPSW, thereby allowing this Court to pierce the corporate veil. *See Harte-Hanks Direct Mktg./Baltimore, Inc. v. Varilease Tech. Fin. Grp., Inc.*, 299 F. Supp. 2d 505, 514 (D. Md. 2004) ("Under Maryland law, the court may pierce the corporate veil for jurisdictional purposes if the circumstances would allow piercing of the corporate veil generally.").

Given the lack of factual development at this early stage of the litigation, this Court cannot conclude that it has personal jurisdiction over Environ. And without personal jurisdiction over Environ, the Court cannot grant injunctive relief against it. *See Hawkins*, 935 F.3d at 228. At the same time, preliminary evidence introduced by Evapco (and Defendants' failure to adequately address that evidence at the hearing) raises concerns about whether Environ has actually retained

its corporate separateness since being acquired by MPSW.[2] *See Hildreth v. Tidewater Equip. Co.*, 838 A.2d 1204, 1210 (Md. 2003) (stating the test for when Maryland courts will pierce the corporate veil). Accordingly, while this Court cannot grant a TRO against Environ at this stage, it will allow Evapco to seek limited expedited jurisdictional discovery against Environ, beginning as of the January 19 hearing. Any jurisdictional evidence produced may be presented at the hearing on February 9. At that point, Evapco may reprise its argument for a preliminary injunction against Environ, should discovery reveal further facts indicating that this Court's exercise of personal jurisdiction would be appropriate.

Furthermore, given the intertwined nature of the allegations against Environ and the MPSW Defendants, this Court will defer additional consideration of whether to grant a preliminary injunction against any of the Defendants until after the hearing on February 9, 2023. In the interim, however, this Court will proceed to consider the requested TRO against MPSW and Schmitt.

### B.  TRO Request Against the MPSW Defendants

MPSW and Schmitt do not dispute that this Court has personal jurisdiction over them, pursuant to a forum selection clause in the Agreements. ECF 1-2 § 21; ECF 1-3§ 22. Once again, Evapco must satisfy all four TRO factors in order to prevail. *Pashby*, 709 F.3d at 320–21.

####   i.  *Factors 1, 3, and 4*

Three of the factors appear to be relatively straightforward on the instant record. As to the likelihood of success on the merits, the MPSW Defendants have effectively conceded that they

---

[2] For example, evidence indicates that (1) Schmitt told Evapco's CEO that Environ business would be "under MPSW" and that he would be President of the combined company, ECF 2-2 ¶ 21; (2) Environ's former vice president now holds himself out to be a vice president at MPSW, ECF 20-1 ¶ 1; and (3) calls to Environ's office are answered by individuals identifying themselves as MPSW employees, ECF 2-16 at ¶¶ 3-4. At the TRO hearing, counsel for Defendants could not confirm whether Environ had any actual employees, or whether all of Environ's former employees now worked for MPSW.

breached the clause of the non-compete provisions requiring them to refrain from "directly or indirectly, solicit[ing] orders for, distribut[ing] or otherwise promot[ing]" any competitor products during the 90-day transition period. In its opposition, MPSW admitted that shortly after the Agreements were terminated, "it submitted a small number of bids that would have put it in competition with Evapco." *See* ECF 21 at 10. And in a declaration submitted on the eve of the TRO hearing, Schmitt stated that he had learned of 24 bids placed for BAC equipment in December, though those bids were subsequently cancelled. ECF 32 ¶ 11. These competitive bids alone appear to clearly violate the plain language of the non-compete clause.[3]

Regarding the balance of the equities, any inconvenience to the MPSW Defendants occasioned by the requested injunctive relief seems relatively minor, given that the "relief" that Evapco seeks is merely the enforcement of the parties' non-compete clause. *NaturaLawn of Am., Inc. v. W. Grp., LLC*, 484 F. Supp. 2d 392, 400 (D. Md. 2007) (finding that balance of equities weighed in favor of enjoining defendants' failure to comply with a non-compete provision, where the hardship resulting from compliance was "created by [the defendants'] own willful acts" in breaching the provision). Indeed, MPSW has represented that it does not plan to sell or promote any competing products during the remainder of the 90-day transition period. If this representation is true, injunctive relief should result in no harm to the MPSW Defendants.

---

[3] Defendants have argued that Evapco is nonetheless unlikely to succeed on the merits because non-compete provision is unenforceable under Maryland law. ECF 21 at 18-22. Because this Court ultimately concludes that Evapco has not met the standard for showing irreparable harm, the resolution of this issue is not material to the instant motion. However, Defendants may continue to assert their unenforceability defense moving forward with respect to Evapco's request for a preliminary injunction. Likewise, the Court need not address, for the purposes of this Motion, the MPSW Defendants' argument that any breach of the non-compete provisions was *de minimus*. ECF 21 at 22-23.

Finally, courts have held that "the public interest . . . weighs in favor of enforcing . . . reasonable contractual restrictions." *Gen. Parts Distrib., LLC v. St. Clair*, No. 11-cv-03556, 2011 WL 6296746 at *7 (D. Md., Dec. 14, 2011); *see also Intelus Corp. v. Barton*, 7 F. Supp. 2d 635, 639 (D. Md. 1998) ("[T]he public has an interest in the enforcement of reasonable restrictive covenants."). As with Factors 1 and 3, then, this Court will assume that Evapco has met its burden in establishing that the public interest favors injunctive relief here.

  ii.  Factor 2

In addition to the three elements discussed above, however, Evapco must show that it will suffer irreparable harm in the absence of preliminary relief. *League of Women Voters*, 769 F.3d at 236. The irreparable harm needed to support an injunction must be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991). Based on the limited evidence introduced so far, Evapco has failed to meet its burden to show that it will suffer imminent and irreparable harm if this Court does not enter a TRO against the MPSW Defendants.

Initially, the fact that the MPSW Defendants seemingly breached the non-compete provisions by placing (then cancelling) BAC bids is insufficient, on its own, to justify injunctive relief. "Past harm, without more, cannot form the basis for injunctive relief." *Defy Ventures, Inc. v. U.S. Small Bus. Admin.*, 469 F. Supp. 3d 459, 480 (D. Md. 2020). Defendants have represented that they are no longer authorized by BAC to sell its products, either directly or through Environ, and Evapco has presented no non-speculative evidence that offending bid solicitations are likely to recur.

Evapco also presents another theory of harm, however. It points to language in the MPSW Defendants' opposition brief stating that "[MPSW and Environ] are and will continue to fulfill

open orders and will support existing work orders that are still in production at [Evapco and BAC's] factories." ECF 21 at 9 n.3. A declaration submitted by Schmitt similarly states that MPSW and Environ will not sell any competitor products "[a]side from completing past orders." ECF 21-1 ¶ 14. Evapco argues that to the extent that completing past orders involves distributing BAC products or repair parts, this would likewise constitute a violation of the non-compete provision. At the parties' TRO hearing, counsel for MPSW did not deny the possibility that completing past orders received by MPSW or Environ before December 2, 2022—the date that the Agreements terminated—could involve the distribution or use of competing products.

Ultimately, this Court is not convinced that the possibility of MPSW's fulfilling pre-existing orders for competitor products would present the type of irreparable harm that justifies injunctive relief. Specifically, it is not clear how MPSW completing these outstanding orders would deny Evapco a potential customer (since these customers already chose a BAC product) or otherwise injure its position in the marketplace. The disputed orders were placed before the Agreements terminated, and MPSW would simply be fulfilling orders by individuals who had already agreed to purchase competitor products. While MPSW's support and fulfillment of outstanding work orders for competitor products may indeed constitute a breach of the Agreements, Evapco has not demonstrated that the harm from such an alleged breach would be irreparable. Based on the evidence currently before the Court, then, Evapco has not shown that it is entitled to a TRO. However, the Court has already allowed full discovery between Evapco and the MPSW Defendants to begin, and Evapco may reprise its arguments in favor of a preliminary injunction during the Motion hearing on February 9, 2023.

## IV. CONCLUSION

For the reasons stated above, Evapco's Motion, ECF 2, will be DENIED to the extent it seeks a TRO. Consideration of whether to grant a preliminary injunction will be STAYED pending the preliminary injunction hearing on February 9, 2023, at 10 a.m. A separate Order follows.

Dated: January 23, 2023

/s/
Stephanie A. Gallagher
United States District Judge